UNITED STATES v. CHICAGO, M. & P. S. RY. CO.

(District Court, D. Idaho, N. D.   December 15, 1914.)

No. 448.

**1. MASTER AND SERVANT ⟨⟩13—HOURS OF SERVICE—STATUTORY PROVISIONS.**

Where a railroad company made a rule that, if a train was held over 30 minutes at a siding where there was no open telegraph office, the conductor should report to the dispatcher for orders, using a telephone, if no operator was available, and, to make that possible, installed telephones at various points where no telegraph operators were employed and no regular stations were maintained, a train conductor by using the telephone, pursuant to such order, did not come within the proviso of section 2 of the Hours of Service Act (Act March 4, 1907, c. 2939, 34 Stat. 1415 [Comp. St. 1913, § 8678]) that no operator, train dispatcher, or other employé, who, by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements, shall be permitted to remain on duty for longer than 9 hours or at certain offices 13 hours in any 24-hour period.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ⟨⟩13.]

**2. MASTER AND SERVANT ⟨⟩17—HOURS OF SERVICE—ACTIONS FOR PENALTY—COMPLAINT.**

Assuming that the conductor was within such proviso, the complaint, in an action for a penalty, was insufficient where it failed to show that he used the telephone after the lapse of either 9 or 13 hours.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. ⟨⟩17.]

Action by the United States against the Chicago, Milwaukee & Puget Sound Railway Company, to recover a penalty. On demurrer to the complaint. Demurrer sustained, and cause dismissed.

James L. McClear, U. S. Atty., of Cœur d'Alene, Idaho, J. R. Smead, Asst. U. S. Atty., of Boise, Idaho, and Otis B. Kent, Sp. Asst. U. S. Atty., of Washington, D. C.

George W. Korte, of Seattle, Wash., for defendant.

DIETRICH, District Judge.   [1] The action is brought to recover a penalty under the provisions of what is commonly known as the Hours of Service Act (34 Stat. 1415).   The defendant is an incorporated railroad engaged in interstate commerce, and is subject to the act.   On December 27, 1913, it issued a general order, of which the following is the material part:

"Should a train be held over thirty minutes at a siding where there is no open telegraph office, the conductor will report to the dispatcher for orders, calling the day operator, if there is one available, and if there is not, using the telephone."

To make obedience to the order possible, the defendant installed at various points where no telegraph operators were employed, and no regular stations maintained, telephones for the use of its conductors. On February 11, 1914, one G. W. Perry, a conductor in defendant's service, regularly and generally engaged in and connected with the movement of its trains in interstate commerce, went on duty at 3:15

a. m., with instructions to meet another train of the defendant at a siding called Pandora. After waiting 30 minutes at the siding, Perry, in compliance with the regulation, used the telephone installed at that point for the purpose, of communicating with the train dispatcher. Thereafter he remained on duty until 5:40 p. m., and was therefore on duty continuously from 3:15 a. m. to 5:40 p. m., a period of 14 hours and 25 minutes. The record does not disclose at what particular hour the telephone was used.

The question at issue arises in this way: If, under the provisions of section 2 of the act, Perry be deemed to have been a conductor only, and hence a person "actually engaged in or connected with the movement" of a train in interstate commerce, it was the right of the defendant to permit and require him to remain on duty for a period not longer than 16 consecutive hours, whereas, if, by reason of his use of the telephone, he falls within the proviso of the section, then he could not lawfully be kept in service for a period of more than 13 or 9 hours, as the case may be. The proviso is as follows:

"That no operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than 9 hours in any 24-hour period, in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than 13 hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency," etc.

The contention of the government is that, by using the telephone at Pandora siding, Perry became an "employé who, by the use of the * * * telephone, reports, transmits, receives, or delivers orders pertaining to or affecting train movement," and that therefore automatically he became subject to the limitation applicable to the class of employés covered by the proviso.

[2] It may be said in passing that, there being no averment in the complaint that Perry used the telephone after the lapse of the 9-hour or 13-hour period, upon that ground alone it should be held that there is a failure to state a cause of action. But it is unnecessary to rest the decision upon so casual a circumstance. Primarily Perry was a conductor and not an operator or a train dispatcher. By resort to the strict letter of the proviso, doubtless the language may be made to cover such a case; but the statute should have a sensible construction, and its general purpose may be effected without adopting a view so harsh and onerous primarily to the railroad company but ultimately to the public, upon whom the burden of expense must finally rest. The purpose undoubtedly was to protect the lives both of passengers and of employés, and also to safeguard freight in transit. It was understood that, if one who is engaged as an operator or a train dispatcher were required to remain on duty continuously for more than a certain length of time, through weariness and the need of sleep he might become inattentive to his duties and fail to hear or see that which he ought to hear and see. But no such peril arises in a case like this. If, through weariness, the conductor should fall asleep, or fail to resort to the telephone, as directed by the general order above quoted, there could be

no danger, for in such a contingency his train would remain in a place of safety; and, upon the other hand, if he does resort to the telephone, the very necessity of acting gives assurance that he will be awake and sufficiently alert to report and receive his orders. Certainly, under such conditions, it would require no greater degree of consciousness or mental activity to properly transmit and receive a telephone message than it would to receive and correctly read an order transmitted from the dispatcher's office by telegraph and delivered by the local operator. While the government is insisting upon a literal acceptation of the language of the proviso in this particular, it is under the necessity of applying a more liberal rule to other phraseology contained therein. Here is a siding with no station, but with a telephone instrument presumably attached to a telegraph pole. If, by reason of his use of the telephone, Perry fell within the limitations prescribed, which period are we to adopt, 9 hours or 13 hours? The statute provides that an operator shall not remain on duty for a longer period than 9 hours "in all towers, offices, places, and stations continuously operated night and day." Clearly this was not such a place. And for no longer period than 13 hours "in all towers, offices, places, and stations operated only during the daytime." It is equally clear that this was not such place. At least, there is no more reason for saying that it was a place "operated only during the daytime" than a place "continuously operated night and day." And there is no other alternative. The truth is that, strictly speaking, it is not a place operated either day or night.

It is deemed to be unnecessary to pursue the discussion at any great length, for I am inclined to think that the construction put upon the act in Missouri Pacific Railway Co. v. United States (C. C. A. 8th Circuit) 211 Fed. 893, 128 C. C. A. 271, is the correct one, and there is little to be added to the reasoning there adopted. Upon principle the facts of the case cannot be distinguished from those here involved. Switch tenders, whose primary duty was to throw the switches, made use of a telephone leading from a shed in the yards for the purpose of communicating with the tower men at the depot. The tower men used the telephone from time to time to inform the switchmen what was wanted. The court said:

"The difference in the hours of labor fixed by section 2 was based upon the character of the service rendered by the employé, not upon the use of the telephone. R. Connell and J. W. King (switchmen), beyond question, were not operators or dispatchers. * * * The proviso ought not to be construed so broadly as to annihilate the general language of the section. We think that, under a well-established rule of construction, the words 'or other employé,' found in the proviso, must be construed to mean an employé engaged in the same character of service as a train dispatcher or operator, who, by the use of the telegraph or telephone, performs the work described in the proviso. In other words, Congress intended the 9-hour provision to apply to employés whose primary duty was to dispatch, report, transmit, receive, or deliver orders pertaining to or affecting train movements. * * * Where general words follow an enumeration of particular classes of persons or things, they will be construed as applicable only to persons or things of the same general nature or class as those enumerated. * * * The words 'other' or 'any other,' following an enumeration of particular classes, are therefore to be read as 'other such like,' and to include only others of like kind or character. * * * As the word 'employé,' in the proviso of section 2, includes 'operator' and 'train dispatcher,' for the latter are both employés,

the conclusion here is irresistible that Congress intended, by the use of the words 'other employé,' to mean an employé engaged primarily in the same class of service as would be performed by an operator or train dispatcher. If this be the right construction to place upon the proviso, then R. Connell and J. W. King were not in any sense employés, whose primary duty was to dispatch, report, transmit, receive, or deliver by the use of the telegraph or telephone orders pertaining to or affecting train movements, within the meaning of the proviso. While, as has been said before, we must give the law such a construction as will promote the purpose of the law, in our zeal to do so, however, we must not attempt to legislate ourselves."

If these views be correct, it follows that the demurrer must be sustained, and the cause dismissed; and such will be the order.